(No. 18604.—Judgment affirmed.)
THE PEOPLE ex rel. William J. Drea, Plaintiff in Error, vs.
J. C. HANSON et al. Defendants in Error.

*Opinion filed April 21, 1928.*

1. POLICE PENSIONS—*when amendment of 1917 bars pension under the act of 1915.* The amendment of July 1, 1917, to the Police Pension Fund act of 1915 bars any right to pension until the applicant has reached the age of fifty years, and as the amendment is retroactive as to all applications for pension subsequent to March 1, 1917, an application made in April, 1917, is properly denied at a hearing in July, 1917, after the amendment took effect, where the applicant is but forty-eight years of age, as the applicant had no vested right to a pension under the act of 1915. (*Beutel* v. *Foreman,* 288 Ill. 106, followed.)

2. SAME—*Police Pension Fund act of 1921 is not invalid.* The act of 1921 providing for a police pension fund in cities of more than two hundred thousand inhabitants and creating a "retirement board" for the payment of pensions does not violate section 13 of article 4 of the constitution, as the title does not embrace more than one subject and the provisions of the act are germane to the subject expressed in the title, and the reference to the former Police Pension act does not render the act invalid, as the act is complete in itself and there is no objection to incorporating provisions of another act by reference thereto.

3. SAME—*amendment of 1925 to Police Pension Fund act of 1921 does not delegate judicial power.* The amendment of 1925 to the Police Pension Fund act of 1921, authorizing the retirement board to reimburse itself by retaining out of any future pension or benefit payments any amount or amounts paid to a pensioner through misrepresentation, fraud or error, is not an unlawful delegation of judicial power to said board, as the board is not authorized to adjudicate any contract or vested rights of a pensioner.

4. SAME—*an agreement with retirement board as to disputed pension claim is not an accord and satisfaction—act of 1925.* An agreement in 1921 by certain pension applicants accepting a certain sum to be prorated among them in consideration of their releasing all disputed claims on account of back pensions does not bind the retirement board by way of an accord and satisfaction, as an accord and satisfaction can arise only out of a contract or tort action, and as the right to a pension is not a contract or vested right and the pension fund is subject to the control of the legisla-

ture, the retirement board may proceed under the amendment of 1925 in disregard of the compromise agreement.

5. STATUTES—*statutes will be construed valid, if possible.* It is the duty of courts to so construe statutes as to sustain their constitutionality if it can reasonably be done.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. HOSEA W. WELLS, Judge, presiding.

WILLIAM McKINLEY, and PAUL E. PRICE, for plaintiff in error.

SAMUEL A. ETTELSON, Corporation Counsel, and GEORGE F. MULLIGAN, (ROY S. GASKILL, E. MARSHALL AMBERG, and W. ARNOLD AMBERG, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, William J. Drea, (hereafter referred to as petitioner,) filed a petition for *mandamus* against the Retirement Board of the Policemen's Annuity and Benefit Fund and the persons composing said board. The petition alleged, in substance, that after completing a service of twenty years as a policeman in the city of Chicago he tendered his resignation on the 9th day of April, 1917, and filed with the board of trustees of the police pension fund his application for a pension. At the time he filed his application, and previously, the law provided that when a member of the police department had served twenty years or more prior to his retirement he should be paid a yearly pension equal to one-half the amount of the salary attached to the rank he held for one year immediately prior to retirement. Petitioner presented his application to the trustees of the police pension fund, and at a meeting held the 25th day of April, 1917, the board failed to take final action on the application because petitioner was under the age of fifty years, and the application was postponed though applications of other persons in a similar situation to petitioner

were allowed. The Police Pension act of 1915, which was the law in force when the application for a pension was made, did not require the applicant to be fifty or more years old. Petitioner was, in fact, forty-eight years of age. In June, 1917, an act adopted by the legislature was approved and went into force July 1, 1917, which required an applicant for a pension to be fifty or more years old. The petition avers that the amendment was not applicable to petitioner, whose right to a pension had previously become vested. The petition further avers that the trustees of the police pension fund held a meeting July 12, 1917, and denied the application of petitioner because he had not attained the age of fifty years. The board held another meeting on February 27, 1918, and placed the name of petitioner on the pension roll from the date of his retirement up to and including June 30, 1917, and ordered his name stricken from the roll as of July 1, 1917, because he had not attained the age of fifty years. Petitioner and others similarly situated urged the board to reconsider its action, and a committee was appointed by the board to investigate the rights of petitioner and others, and afterwards, at a meeting of the board in September, 1921, the committee reported, recommending that the legal adviser of the board be authorized and instructed to enter into a compromise agreement with petitioner and others similarly situated, whereby, in consideration of the acceptance by the claimants of an aggregate sum not in excess of $12,000 on account of back pension payments claimed and the release of the board from all claims on account of back pensions from July 1, 1917, to August 1, 1921, the board would restore the name of petitioner, and others similarly situated, to the pension roll and pay pensions commencing August 1, 1921, and continuously thereafter. The petition avers that petitioner and others similarly situated compromised their claims for back pensions by acceptance of the aggregate sum of $10,000 to be prorated among the claimants, and the re-instatement of

330—6

petitioner on the pension roll as of August 1, 1921, and the payment to him of a pension thereafter continuously, and petitioner and others similarly situated released the board from all claims for back`pensions and from all legal proceedings pending or contemplated. The petition alleges that the settlement and compromise were.a valid accord and satisfaction. The petition avers that for four years after the compromise settlement petitioner and others similarly situated were, respectively, paid the pensions in accordance with the law until June 29, 1925, when the board, without warrant or lawful authority, purported to repudiate the settlement agreement and struck petitioner's name from the pension roll and directed that no further pension be paid him until he had paid back into the police pension fund all moneys paid him before attaining the age of fifty years, together with interest thereon, and on the first day of January, 1926, the board passed an order or resolution, as follows:

"In the matter of the pension of William J. Drea, the payment of which was suspended by the Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago on the 29th day of June, 1925, and a hearing as to his pension rights granted subsequent to said suspension, this board finds from the evidence submitted at said hearing the following:

"*First*—That William J. Drea was less than fifty years of age at the time he was placed upon the pension roll, and that he was therefore improperly placed upon said pension roll and improperly paid a pension thereafter.

"*Second*—That he was paid the sum of $619.94 as pension prior to his attaining age fifty, and that said money was paid to him in error.

"*Third*—That the fund has lost the interest earnings on the said amount so paid at the rate of four (4) per cent per annum from the date thereof until January 1, 1926, and has earned a like rate of interest on pension payments by it withheld from the said William J. Drea.

"*Fourth*—That the said William J. Drea is indebted to the policemen's annuity and benefit fund for all moneys paid to him as pension payments prior to his attainment of the age of fifty years, and interest to 1/1/26, $722.87.

"*Fifth*—That on 1/1/26 the said William J. Drea had to his credit on account of withheld pension payments the amount of $385, which, together with interest thereon, makes a total amount to his credit of $388.80.

"It is therefore ordered that any pension payments which have accumulated and which may hereafter become due and payable to William J. Drea since suspension of payments to him shall be credited upon the books of the board of the indebtedness hereinabove referred to; and

"It is further ordered that when the indebtedness shall have been canceled by reason of crediting thereto the pension payments hereinabove referred to or by the voluntary re-payment of the said amount due by the said William J. Drea, then payment of pension to William J. Drea for his own use shall be resumed, the order of suspension of said pension payments heretofore entered to stand until such resumption as herein provided.

"It is further ordered that interest shall be charged on the several amounts due from the said William J. Drea and interest shall be credited to him on all accumulated withheld pension payments, all at the rate of four (4) per cent per annum."

The petition avers that the act relating to the payment of pensions, as amended in 1923, provided that all pensions granted under the provisions of the act should be exempt from attachment or garnishment process, and should not be taken, scized, subjected to, detained or levied upon by virtue of any execution or process issuing out of any court for the payment, in whole or in part, of any debt, damage, claim or judgment against any annuitant or pensioner. In 1925 the General Assembly passed a purported amendment to the provision just referred to of the act of 1923, to authorize the board to retain out of any future pension payments such amount as it may in its discretion set aside for the purpose of re-payment into the annuity and benefit fund of any moneys paid any pensioner through misrepresentation, fraud or error. Said act of 1925 also provided that no pension should be suspended until the pensioner shall be first notified of the proposed action and given an opportunity to be heard. The petition avers petitioner was given no notice or hearing prior to the suspension of pension pay-

ments.   The petition avers that the statute purporting to confer authority upon the board to determine whether any funds had been paid through misrepresentation, fraud or error and retain all amounts as it may be determined had been so paid confers judicial powers upon the board, contrary to the constitution and statutes, and is not applicable to any person retired under the terms of the Police Pension act in force prior to July 1, 1921.   It is further averred the act of July 1, 1921, is unconstitutional in that it purports to supersede all prior pension laws theretofore existing, and confiscates the fund acquired to meet the requirements of prior acts and use the same in a manner to deprive petitioner and other claimants under the former law of vested rights in said fund.   Petitioner prayed a writ of *mandamus* commanding the board to cancel and annul its order of June 29, 1925, suspending payment of a pension to petitioner and to annul its order of January 1, 1926, ordering that any pension payment which thereafter became due and payable to petitioner since the suspension of payments shall be credited on the books of the board upon the indebtedness claimed by the board to exist, and to restore petitioner to the roll and forthwith pay all pension claims withheld from the date of suspension, with interest, and to continue payment thereafter in accordance with law.   The court sustained a demurrer of the board to the petition, and petitioner electing to stand by his petition, a judgment was entered dismissing the same, and a writ of error was sued out of this court to review the judgment.

Questions raised by the petition are, (1) was petitioner's right to a pension an expectancy, or did it become a vested right under the law in force at the time of his retirement and application for a pension; (2) was the compromise agreement in September, 1921, an accord and satisfaction; (3) was the act of 1921 in violation of section 13 of article 4 of the constitution; (4) was the amendatory act of 1925 constitutional.

The Police Pension act of 1915 (Laws of 1915, p. 304,) which was in force at the time petitioner severed his connection with the police department, provided that whenever any person shall have served for a period of twenty years or more in the police department, the board created to carry out the provisions of the act shall order and direct that if the policeman's services in the department shall have ceased he shall be paid a yearly pension. There was no age requirement in the act to entitle the policeman to a pension. Petitioner presented his application in April, 1917. He was then forty-eight years old. The application was presented to the trustees of the police pension fund at a meeting held April 25, 1917. The board took no action at that meeting, but at a meeting held July 12, 1917, the application was denied for the reason that petitioner had not attained the age of fifty years. The act of 1915 was amended in 1917, the amendment becoming effective on July 1 of that year. (Laws of 1917, p. 274.) It required that a policeman, to be entitled to a pension, should have served a period of twenty years or more and should have arrived at the age of fifty years or more. The amendment of 1917 provided that notwithstanding the provisions of that act or the act which it superseded, no pension should be granted any policeman after March 1, 1917, unless he was qualified for retirement under the provisions of the act of 1917, "the intention being that the terms and conditions of retirement and of the granting of pensions for such policemen under this section shall be retroactive in their effect, and shall relate to all applicants for pensions after the date aforesaid." It was further provided that in case any pension shall have been granted after said date, contrary to the act, such pension shall at once cease and determine. The trustees of the pension fund at a meeting held February 27, 1918, placed the name of petitioner on the pension roll from the date of his retirement up to and including June 30, 1917, and ordered his name be stricken from the pension roll as of

July 1, 1917. The qualifications for a pension under the act of 1917 were expressly declared to be retroactive·and to apply to all policemen after March 1, 1917. Petitioner was not qualified for retirement and to a pension under the provisions of that act.

Petitioner contends that he was qualified at the time of his retirement and his application for a pension in April, 1917, as the law at that time contained no requirement that he be fifty or more years of age, and that his right to a pension under the law as it then existed was no longer an expectancy but became a vested right. This question was settled by the decision in *Beutel* v. *Foreman*, 288 Ill. 106, which we think is controlling. In that case Beutel, a policeman, after a service of twenty years on the force, filed an application for a pension with the board of trustees of the police pension fund in Chicago on March 31, 1917. His application was denied because the act of July 1, 1917, provided no policeman should be pensioned after service of twenty years until he should have reached the age of fifty years. Beutel was not fifty years of age at the time. The court held the act of 1917 was retroactive and excluded Beutel from a right to a pension at the time he made his application. It was further held that the laws in force previous to July 1, 1917, gave Beutel no contract or property right to a pension at the time he filed his application and that no vested right of Beutel was violated by the act of 1917. *Hughes* v. *Traeger*, 264 Ill. 612, was quoted with approval. In that case the court said: "The fund created by these deductions [from salaries of policemen] remains subject to the disposition of the legislature, and the employees cannot prevent its appropriation in another way than that designated by the statute. It is not their property, and the statute does not amount to a contract by the State to use it in the manner provided by the statute. A change in the disposition of the fund would not, however, violate any right of the complainant, for until the happening of the

event designated by the statute for its distribution he has no vested right in the fund but only an expectancy created by the law, which the law may revoke or destroy." (Citing cases.) One of the cases cited is *Pennie* v. *Reis*, 132 U. S. 464. The court quoted from that case, in part, as follows: "There was no contract on the part of the State that its disposition should always continue as originally provided. Until the particular event should happen upon which the money, or a part of it, was to be paid, there was no vested right in the officer to such payment. His interest in the fund was, until then, a mere expectancy created by the law and liable to be revoked or destroyed by the same authority." In the *Beutel case,* as in the instant case, the claim of the applicant for a pension was made subsequent to March 1, 1917, and because the applicant had not reached the age of fifty years or more he was refused a pension in obedience to the act of 1917.

The board created by the statute to control and administer the pension fund has been called by different names in different acts since the first act creating the pension fund. By the act of 1921 it was denominated the "retirement board" of the policemen's annuity and benefit fund. That act preserves to all beneficiaries all rights they had to a pension under the act of 1915. Petitioner's name had been on the pension roll from August, 1921, until June 29, 1925. At a meeting of the retirement board on January 1, 1926, it did not strike petitioner's name from the pension roll but entered the order quoted above, that pension payments accumulated should be withheld until they have canceled payments erroneously made, by crediting them on payments so made, unless petitioner voluntarily made re-payments until the fund was reimbursed the sum previously erroneously paid to him. That was the effect of the order of the retirement board made on June 29, 1925, that no further payments be made to petitioner until the moneys paid prior to his attaining the age of fifty years, contrary to law, had

been reimbursed to the fund. Petitioner's name is on the roll of pensioners and he will receive the pension when the fund has been reimbursed for payments made to which he was not entitled.

Counsel for petitioner contend the *Beutel case* is not controlling and attempt to distinguish it from this case. We do not think the *Beutel case* can be distinguished from the present case, but there is an obvious distinction between this case and the cases upon this question cited from this and other jurisdictions in support of petitioner's position.

The act of 1921 (Laws of 1921, p. 262,) is entitled, "An act to provide for the creation, setting apart, maintenance, and administration of a policemen's annuity and benefit fund in cities having a population exceeding two hundred thousand inhabitants." It provided that the policemen's benefit fund accumulated under the previous act should be transferred to and be administered by a board denominated the "retirement board" and for the payment of pensions out of the fund provided for that purpose. The 1921 act does not purport to be an amendment of any prior act but is an independent act to provide for the creation and administration of a policemen's annuity and benefit fund in cities having a population exceeding 200,000 inhabitants. It is contended by petitioner that the act cannot be understood without reference to and a study and examination of prior acts upon the subject; that it is an attempt to change the existing statute by intermingling provisions of a new act with those of the old statutes, and that its title does not sufficiently give notice of the subject of the legislation and violates section 13 of article 4 of the constitution. The title of the act of 1921 does not embrace more than one subject, and that is expressed in the title. Everything contained in the act is germane to the subject expressed in the title. This subject has been many times considered by this court. A few of the cases are: *People* v. *DeGeovanni,* 326 Ill. 230; *Italia America Shipping Corp.* v. *Nelson,* 323

id. 427; *People* v. *Stacker,* 322 id. 232; *People* v. *Hoff-
man,* id. 174; *Hagler* v. ,*Small,* 307 id. 460. Reference to
the former Police Pension act made in the policemen's an-
nuity and benefit fund act of 1921 does not render the act
unconstitutional, as there is no objection to incorporating in
an act the provisions of another act by reference thereto.
This was decided in *Hagler* v. *Small, supra,* and *Zeman* v.
*Dolan,* 279 Ill. 295. It is the duty of courts to so construe
statutes as to sustain their constitutionality if it can reason-
ably be done. (*People* v. *Newcom,* 318 Ill. 188; *City of
Chicago* v. *Manhattan Cement Co.* 178 id. 372.) The pen-
sion fund created by the former act was under the control
of the legislature, and the change of the board provided for
administering the fund of the previous act and the transfer
of the fund to the retirement board of the act of 1921 were
within the control of the General Assembly.

Petitioner argues that prior to the amendment in 1925
of section 58 of the act of 1921 (Laws of 1925, p. 226,)
no authority was conferred upon the retirement board to
reimburse itself for funds paid out through fraud, misrep-
resentation or error, and that the amendment of 1925 con-
ferring authority upon the board to reimburse itself is an
unconstitutional delegation of judicial power. Petitioner
admits the amendment of 1925 was in general sustained in
*People* v. *Retirement Board,* 326 Ill. 579, but contends it
does not appear to have been urged against the amendment
that it conferred judicial powers upon the board, and for
that reason it is contended the case does not adjudicate the
objection here raised. In that case paragraph (*g*) of sec-
tion 6 of the 1925 act was being considered, while here
section 58 is involved. The two sections confer powers
of a similar character upon the retirement board. The ob-
jection in the *Retirement Board case* to the amendment of
1925 was, that it contravened section 1 of the fourteenth
amendment to the constitution of the United States and
section 2 of article 2 of the constitution of this State.

The court said: "This contention cannot be sustained. As against the State or its political subdivisions there is no vested right in a pension accruing in the future from month to month. (*Beutel* v. *Foreman,* 288 Ill. 106; *Gibbs* v. *Minneapolis Fire Department Relief Ass'n,* 125 Minn. 174, 145 N. W. 1075.) A pension is a bounty springing from the appreciation and graciousness of the sovereign and may be given or withhheld at its pleasure. (*Eddy* v. *Morgan,* 216 Ill. 437.) There is no contract on the part of the State to continue the payment of a benefit or annuity, and a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a person of property without due process of law within the meaning of the constitutional provisions invoked.—*Pennie* v. *Reis,* 132 U. S. 464, 10 Sup. Ct. 149; *Pecoy* v. *City of Chicago,* 265 Ill. 78." It seems clear if the amendment was valid as against those objections it would be as against the objection that it was an unconstitutional delegation of judicial power. The amendment of 1925 authorized the retirement board to retain out of any future pension or benefit payments such amount or amounts as it may, in its discretion, see fit for the purpose of re-payment into the annuity and benefit fund of moneys paid to a pensioner through misrepresentation, fraud or error, and the board and the funds were released from any liability for retaining moneys under that statute.

The act since the amendment of 1925 (Laws of 1925, sec. 6, par. (*g*), p. 214,) provides that no pension shall be reduced or suspended without first giving notice to the beneficiary and an opportunity to be heard. No notice appears to have been given before the order of June 29, 1925, was made. Petitioner's name was not stricken from the roll of pensioners at that time, as we understand it, but the order was that payments of the pension were to be suspended until the fund was reimbursed by the accumulation of the suspended payments. It was, in effect, the same as the or-

der of January 1, 1926. Notice was given and a hearing had prior to the making of that order. The order of January 1, 1926, made after notice and hearing, was authorized by the statute. That a similar order was previously made without notice could not change or affect the rights of petitioner on the hearing at which the order of January 1, 1926, was made.

By the compromise agreement of September, 1921, petitioner and others similarly situated accepted a much less sum to be prorated among them than they claimed was due and released the retirement board from all claims on account of back pensions from July 1, 1917, to August 1, 1921. Counsel for petitioner insist the law relating to accord and satisfaction is applicable and that the compromise agreement should be sustained under the law relating to that subject. We do not think the doctrine of accord and satisfaction applicable to this character of cases. This court has repeatedly held that no contract right of petitioner existed. Petitioner's claim did not arise out of a contract or from an alleged tort. "An accord and satisfaction is a method of discharging a contract or settling a cause of action arising either from a contract or a tort; by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement." (1 R. C. L. p. 177; 1 Corpus Juris, par. 1, p. 523.) The retirement board was in possession of the funds to be administered by the board according to the statutes, which authorized the board to suspend pension moneys paid through fraud or error until the accumulations of the suspended payments reimbursed the trust fund. This having been lawfully done by the board, accord and satisfaction cannot apply, not only because petitioner's claim did not arise out of a contract or tort, but because the law expressly authorized the board to retain pension payments to reimburse the fund for payments made through error. There can be no doubt that the settlement agreement of Sep-

tember, 1921, was not authorized by the law, and the board has no power to make an agreement contrary to the statute which would bind the trust fund under the board's control by the rule applicable to accord and satisfaction in claims arising out of contracts or torts. For the same reason the general rule that money paid through a mistake of law cannot be recovered cannot be applied in this case. Cases cited by petitioner that municipal corporations have power to compromise doubtful controversies we think are not in point. The retirement board was trustee, as we have said, of the pension fund. The board acted without authority of law in making the compromise, and the unlawful agreement could not be binding to deplete the pension fund contrary to the statute.

The superior court of Cook county did not err in sustaining the demurrer to and dismissing the petition, and the judgment is affirmed.

*Judgment affirmed.*